TYLEvR, J.
Suppose a father having advanced to A $50,000, gives him by will $20,000, and to B, $5,000. C, a posthumous child is born : A does not come in : What do you give C?
Robertson. What he would have had if his father had died intestate. As to him the statute, as it were, throws the will in the fire. He would get one half the estate bequeathed — $12,500; towards making up which A and B should contribute propor-tionably out of their legacies, and the balance necessary to make up the *$12,500 would fall on and in this case absorb the residue of A’s legacy— renounced in favor of C in like manner as A’s entire share as parcener would have been absorbed, had his father died intestate, and he (A) had refused to bring in his advancement.
On the other hand it may happen, both where advancements are brought in, and where they are retained, that a surplus will remain to the advanced legatee, of his advancement or legacy or both after the portion of the posthumous child is satisfied: and it has been asked what is to be done with this surplus, of necessity it must belong or revert to the advanced legatee. The bringing in, or retaining the advancement can only affect the shares of the advanced legatee, and the posthumous child — ■ no loss can accrue nor benefit be derived, to unadvanced legatees. They can have no claim to this surplus, because they will have received what the testator gave them, deducting their ratable contribution ascertained in conformity with the construction of the appellee’s counsel — and the posthumous child having also received his full portion can have no right to any thing further.
Great stress has again been laid on the phrase “father’s estate.” The counsel for the appellees contends that this phrase embraces only what was the father’s property at the time of his death. It is true, that property actually given by a father to his children can no longer in strictness be called his; still, practically, it may be considered as his when required to be brought in with a view to distribution: as a gift or *584 loan on a condition annexed by law, that in a certain event, it shall revert, or be returned to be shared with the donor’s other children, whether born or unborn at the time of his decease. In that event it is in effect added to the estate left, and the whole constitutes a mixed fund, which may well be called the father’s estate, since it is by law to be divided among' all the children as though it were actually his, and it may be so called or considered as well as in a case of testacy under the act of *1785, as in one of intestacy. An estate devised, if we adhere to a literal construction, is no more a part of a, father’s estate at the time of division or when the right of a posthumous child attaches, than estate previously given by way of advancement; and a strict construction therefore would lead to the absurdity of confirming a posthumous child to the father’s estate when the father could have no estate at all.
Again, in this particular case, it is to be noted, that the advancements by the deed of 1787 were postponed in enjoyment until after the death of John Macon, the testator. During his life they were actually and literally a part of his estate, and so continued until the same moment when the residue of his estate vested in the devisees — -after his death. In strictness then the appellants have no better right, if the phrase be taken literally, to a share of the devised estate than of the advancements.
But in truth the appellants claim nothing, and can get nothing but a share-of the father’s estate in the strictest sense of the word, unless the appellees voluntarily give them more. Should the appellees elect to retain their advancements it is absolutely certain that the appellants must be confined to the estate left by their father.
It is equally certain should the advancements be brought in, that the whole portion of Ann Wilson can be satisfied out of the estate left — unless the advancements greatly exceed the share which those having them would receive should they be brought in. It is not credible they will be guilty, of the folly of doing this. No such ease is likely ever to occur. None such was contemplated by the Legislature, or can be anticipated by the court.
In the same spirit the counsel on the other side has again endeavored to defend the chancellor’s rigid construction of the provision of the act relating to the manner in which the share of a posthumous child is to be raised.
*The chancellor reads the act as though it had expressly declared that the whole portion, should come out of the part devised and bequeathed, or as he again expresses it, be made up by the dev-isees &c. out of the parts so devised, &c. The counsel has fallen into the same error. The language of the act is “towards raising which portion,” &c. If we must stick to the letter, we should have the words themselves and not translate -them into others which, as here, may have a very different import. Persons may contribute proportionablj7 towards raising a given sum without raising the entire sum required. That is precisely what is shown to be done by the devisees in the tabular statements presented to the court. They contribute towards raising the portion of the posthumous child. But these ratable contributions do not make up that portion where advancements have been made. There is a further amount to be made up, not by the devisees as such, but by the advanced child by reason of his advancements, and under the first clause of the 3d section, giving the posthumous child the benefit of the- law of intestacy. True, the additional sum may on the whole or in part come out of his devise; but he makes his election to-surrender it so far as is necessary to give-to the posthumous child his just and lawful portion ; and the law authorizing or requiring that election, it is not in the power of other parties or of the court to prevent or defeat it. The additional sum cannot properly be regarded as a contribution by the advanced legatee, beyond his proportion, according to the strict terms of the last branch of the 3d section, but where the election is made with a view to his own advantage, as a compensation imposed by the first branch of that section under the law of intestacy, which it adopts — as the condition on which he is allowed to keep his- advancements. On the improbable — not to say incredible supposition that the advanced child may bring in his advancements, when they exceed any share he can get by so doing, the additional sum given to the posthumous child is no-^contribution under the third section, but simply a donation — a free gift. If the Legislature had intended to provide for every case which could arise under the act of 1785, applying in regard to the posthumous children of testators the principle of hotchpot they could not well have used more definite and appropriate language.
To fortify his construction of the third section, the counsel for the appellees, resorts to an act passed more than half a century after. The act of 21st February, 1840, ch. 56, we are told is a legislative exposition of the act of 1785. If the very important question about which the judges of this court now differ, after full deliberation, had been fully discussed by the Legislature, their exposition, though then entitled to more weight, would still have been of no binding authority. But passing that, the argument is that the Legislature in 1840, must have construed the act of 1785, as it is construed by the counsel for the appellees, because they then declared, that the whole portion of a posthumous or pretermitted child of a testator, upon the death of such a child, under age, &c.» “shall revert to the persons, to whom such estate may have been devised, by the will of such testator.” It is very plain, we are told, that the Legislature must have regarded the portion of the posthumous child *585 under the act of 1785, as coming- out of the devised estate, since it is made — -the whole of it — to revert to the devisees. Be it so: the statutory allowance is all the posthumous child can have, and that allowance must in all cases be made up by the devises out of the parts devised and bequeathed to them. How will the court under this legislative exposition dispose of a case of partial testacy, which has already been said to create an insuperable difficulty in the way of the appellants. Take the case in the 4th table. A father devises an estate of the value of S3,000, and leaves undisposed of property to the value of $9,000. He leaves two children to whom he devises the $3,000. A posthumous child is born. Now if this child is entitled to a share of the undis-posed estate, say $3,000, which all admit, *and also to one third of the devised estate, $1,000, how is this sum of $4,000 to be made up by the devisees, out of their devises, amounting in all to $3,000 only. How is this to be done in any case, where the estate as to which the testator is intestate, exceeds that disposed of by his will? and if that were possible, how is the posthumous child’s portion, consisting in part of undevised estate, to revert to the devisees from whom it was not derived? One of two conclusions is inevitable, either the statute cannot be carried out according to the literal construction of the words relating to the manner of raising the share of a posthumous child ; or if that be attempted, such child in a case of partial testacy, (such as may often occur,) must be deprived of any share of the father’s property not disposed of by the will.
It is no objection to our construction, to say that a posthumous child, not thought of by the father, may sometimes get more than children remembered in his will, that may equally happen under the opposite theory. It must happen wherever large legacies are given one or more children, and less than a just and equal share of the whole estate to others. And if it could not, it is no reason, because a parent, for sufficient cause, chooses to disinherit one child, known perhaps to deserve or to require nothing, that an unborn child should be cut off also With a shilling.
Nor is there any weight in the objection gravely urged, that an advanced child may have lost or expended his advancement, and should not therefore incur the hardship of being excluded from an equal participation in what his father might leave. Neither justice, nor the law of intestacy make any exception founded on the use or abuse by an advanced child, of his advancement. As to the hardship, that inflicted on the posthumous child, by excluding the principle of hotchpot, is no comparison greater than can arise to any other child, by applying it as proposed by the appellants. It is every way as just and beneficial in its operation under the third section, which adopts it in a *special case of testacy, as under the preceding sections which first gave it in cases of intestacy. A father gives away $90,000 to his first children, nine in number. One is born after his death unprovided for. All that is left, say $10,000 is devised to those who have already been advanced. What justice is there in any law or rule which would permit them to retain all that thejr had received, and take 9-10 of the pittance left? giving to them of the paternal property, each eleven thousand dollars, and to their helpless brother a hundredth part of what he would have had if the father had died intestate, and the advancements had been brought in, and a tenth of what he must have had if they had been retained. To put the injustice in a stronger light: let us suppose two persons die, similarly circumstanced except that one leaves a will, and the other none; the child of the intestate, under the chancellor’s construction, must get more, it may be ten-fold or a hundred-fold more than that of the testator, under a law declaring that the portion of each shall be the same. What just father would desire this?
On the whole, under our construction, applying the doctrine of hotchpot, as the statute commands, it is made the interest of advanced devisees, in every case which c^n arise under the act of 1785, to bring in their advancements wherever it would be to their interest to do so in a case of intestacy. By rejecting that principle it is made their interest in every possible case to withhold them. Under the one construction, the share of the posthumous child must always be the same, which it would be if the father died intestate: the exact share the statute gives him, and which a just father would wish. Under the other, his portion must invariably be less, and this injustice is done to a helpless infant entitled to the favor and protection of the law and of the court, without adding one cent to the share of unadvanced children, and with the certain consequence of increasing that of those having already undue advantages.
’‘'THOMPSON, J.
It is very manifest, from the decree complained of, the petition praying an appeal, and the opinion given by the chancellor in refusing it, that the sole question decided in the court below, and intended,to be brought up by this appeal, was, as to the true construction of the statute in reference to posthumous and pretermitted children, (raised for the first time by the amended and supplemental bill,) claiming to participate in advancements, and that the question presented by the original bill as to the accountability of the widow, as devisee and legatee for life, to contribution as other legatees and devisees, is not before us; that part of the case never having been adjudicated, but retained and continued by consent of parties for future decision. If that question were now before me, I have no hesitation in saying, that as at present advised, the widow was not liable, if the devise was no more than a fair equivalent for her rights of dower and distribution in *586 her husband’s estate, in lieu of and as compensation for which it was expressly given by the will; for pro tanto at least, if not to the extent of the whole devise, even if it exceeded the legal claim, she must be regarded, not as a volunteer, but a purchaser of the highest dignity.
A preliminar}' question, not affecting the merits of the decision, was started by the appellant’s counsel rather in the form of a query or suggestion, than as a point assumed and insisted on in argument; that it was premature and irregular, and therefore erroneous, for the chancellor to take up and decide the case partially and by piece-meal, as he did by passing upon and dismissing the amended bill, leaving the original undisposed of. If there were any valid ground of objection to the proceeding, had it been done without or against the consent of parties, surely, that ground must be removed by the consent of parties given and entered of record. If the maxim consensus tollit errorem be applicable to any case, none can be conceived of to which it could be more pertinent than this. But, *in truth, the proceeding was neither premature nor irregular, and would have been strictly regular and in accordance with the usages and practice of courts of equity, without and against the consent of the plaintiffs. Where. the amended bill neither makes new parties, nor prays any additional measure of relief, than that sought by the original bill, but merely alleges new and additional matter of fact or law, in corroboration and support of the grounds of relief stated in the original bill, it would, no doubt, be not only premature and irregular, but erroneous, to pass upon a part of the case, on grounds of relief stated in an amended or supplemental bill irrespective of those alleged in the original. In such case the amendment should be considered as much part and parcel of the original bill as if originally inserted, and the two considered and disposed of together, at one and the same time, as if constituting but one bill or pleading. But when, as in the case before us, the amended bill claims an additional, distinct and different measure of relief from that asserted by the original, against new parties, upon new and distinct grounds, praying no further or other relief against the defendants in the original, by the amended bill, than that prayed by the original, what reason can be assigned why (and cui bono should) these two bills be regarded as so indissolubly blended and connected, as that the one may not be passed upon without the other? The questions presented by the two are not only different and distinct, but affect different parties. There was no necessity for further time to mature the cause for hearing upon the merits as to the amended bill, because all the facts were agreed by the pleadings, bill and answer, leaving only for decision a naked question of law arising upon or involved in the true construction of the act in relation to posthumous or pretermitted children. In such a case I am unable to perceive any reason why the defendant should not be permitted to meet the case and call for its decision in limine, as upon a demurrer, precisely as if it were an original bill standing alone *and unconnected with any other. I am aware of no authority or rule of practice forbidding it — cone has been brought to the attention of the court by counsel — and I take it for granted that none such exists; otherwise, it would have been found by the researches of the appellant’s counsel and brought to the notice of the court.
The next, and, in truth, the only question in the cause discussed by the counsel, as if he deemed it at all interesting and important, and meriting the serious consideration of the court, is that briefly commented on by the chancellor in his opinion and decree dismissing the amended, bill, and the petition presented by the plaintiffs, to the chancellor, praying the allowance of an appeal from his decree; and that is the question raised by the amended bill claiming the right for the posthumous and pre-termitted child, to require the advancements to be brought in, and to participate therein according to the true construction of the act of 1785, which took effect in 1787, and which forms part of the 3d l of ch. 104, of the Code of 1819, page 376; which is incorporated, with slight variations, in the Code of 1849, ch. 122, § 18, p. 518; wherein provision is made for posthumous children, pretermitted by will and unprovided for, and which reads as follows in the Code of 1819, being a literal transcript of the act of 1785, the law in force at the death of this testator, and therefore determining the construction of his will:
“When a testator shall leave children born, and his wife enciente, the posthumous child, or children, if it be unprovided for by settlement, and be neither provided for nor disinherited, but only pretermitted by the last will, shall succeed to the same portion of the father’s estate, as such child would have been entitled to if the father had died intestate — 'towards raising which portion the devisees and legatees shall contribute proportionably out of the parts devised and bequeathed to them by the same will and testament.”
*This is a novel as well as an important and interesting question for the first time raised (so far as I am informed) by this case in the court below, and if raised before, in the inferior courts, certainly the first ever brought up for adjudication in the court of last resort.
For the appellants it is contended, that the posthumous child’s portion, under this section, is not determined by or limited to the estate, of which the father died seized and possessed, or entitled to and disposed of by his last will, but it is insisted that the after born child has a right to claim participation in the advancements made to any of the legatees or devisees, in the lifetime of the father in the same way, and to the same extent, as if he had died wholly in *587 testate, in fact. In support of this pretension of the after born child, it is urged that she is so entitled, because, under the statute of descents and distributions, if a father die intestate, all his children must bring in their advancements of whatever kind, if they would come into the partition and distribution, with the other children or par-ceners and distributees of the estate, of which the intestate died seized and possessed ; and if they elect not to come into hotchpot, they must be excluded from such partition and distribution; and that the statute having declared her entitled, in terms so plain and explicit as hardly to leave any room for construction, to the same portion of the estate, as if the father died intestate, it follows as a necessary consequence, that we must interpret the .Legislature as intending to confer upon the posthumous issue all the rights and privileges incident to an actual intestacy, and among them the right to call for the bringing in of advancements, in order to carry out the main design and paramount purpose of the Legislature, to make an equal provision for the pretermitted child: that the first member of the section declares the object and intent of the Legislature to make precisely the same provision for the posthumous child as in case of actual intestacy, and the last, the quo modo of raising that provision by ratable contributions on the devises and bequests given *by the will: that the mode prescribed for raising it does not limit it to an equal aliquot part of the estate left by the father at his death, nor forbid its augmentation by bringing advancements into hotchpot; and that there is, therefore, no necessary repugnancy or conflict between the first and last member of the section: that the apparent conflict and repugnancy, and the supposed difficulty of carrying out both prescriptions of the law might be reconciled or removed by assuming that the advanced legatee or devisee, must of necessity occupy one of three grounds: first, must have been so largely advanced as to be loser rather than gainer, by bringing the advancement into hotchpot, and therefore would not elect to come in, and that if he would be guilty of the folly and injustice of so electing, an act of folly and injustice not imputable in law, according to the argument, to any man, he would be denied the right to make such election; secondly, must have been so advanced and so provided for in the will as to make it one and the same thing to him, whether he came into partition and distribution or not, in which event he would elect to stay out, or if he came in, the result would not be varied; and thirdly, when the advancement was so much less than the legacy, as to make it to his advantage to come in, in which event he should be allowed so to elect, and take his legacy, reduced by his contributive share in favor of the posthumous child, estimated upon the principle of accounting for his advancements. It is said that by thus construing and executing the statute upon the principle of hotchpot, and the equitable election adverted to, we exclude the unadvanced legatee, and virtually the legatee just fully advanced and no more, and are enabled to dispose of the residue of the estate as equally, among the pretermitted child and the unadvanced and the short advanced legatees, as practicable, and as nearly approximating the general result contemplated by the act as possible. And finally, the counsel of the plaintiffs insists, if such irreconcilable conflict and repugnancy, which the other side impute *to his construction, should be found to exist, then the particular or secondary intent must yield to the general or primary one, and that the first part of the statute containing that general intent, must be carried into execution according to its literal or general terms, maugre the last part, and regardless of the consequences and difficulties it may involve.
On the other hand it is argued and insisted, that according to the plain meaning and obvious intent of the Legislature, to be deduced from a rational construction of the law, the posthumous child is entitled to only a full equal share or portion of the estate, of which the father died seized and possessed, or to which he was entitled, and had a right to dispose of by will, and that if he disposes of it all by will, the legatees and devisees i'n that will, must contribute in ratable proportions, to make up the portion or share of the after born child ; that the mode of raising the portions (if not expressly and conclusively,) very persuasively indicates the extent of that portion, and explains, restricts and limits the general words of reference used in the first member of the act, “as if the father had died intestate,” to mean nothing more than to say, that in the contingency of such a birth, the after born should succeed to an equal portion of the father’s estate, meaning the estate that belonged to him at his death, and which he had a right to dispose of by will, and had so disposed of, and that it was not the intention of the Legislature by the use of these general words to apply to this case, the provision requiring advancements to be brought into hotchpot, found in the statute of descents and distributions, applicable from its very nature, reason and terms, to cases of actual absolute intestacy only, and not even applicable to cases of actual partial intestacy, until the adoption of the Code of 1849 — and the counsel on both sides have favored us with tabular statements and calculations to illustrate their respective views, and as showing the remote effects and consequences to which the opposite constructions would lead.
*T7pon the first reading of the statute, the chancellor’s construction of it, which is the one insisted on by the ap-pellee’s counsel, seemed to me to be the plain and obvious one, and the more I have examined and canvassed it, its consistency and accordance with the reason and spirit, and even the letter of the law, has become but the more apparent to my understand *588 ing. If it be possible to allow the after born child to call for advancements, without producing irreconcilable ’conflict and repugnancy between the two members of the section, and disregarding that which levies the portion of the after born child upon the devises and legacies in the will, it must be conceded on all hands, that these advancements, if brought in at all, are only to be so brought in and accounted for quoad the pretermitted child, and not for the benefit of all as in case of actual intestacy; and if so, I cannot conceive of a case of bringing ' in advancements, whether large or small, much or little, that will not, whilst it enures to the benefit of the after born child by augmenting its portion, at the same time operate to the injury of the un-advanced legatees, or those just equally or fully advanced; nor can I conceive of a case where an advanced legatee, no matter how largely advanced, would not gain by coming in with his advancements, to the detriment of the unadvanced legatees; and there seems to me to be as little warrant in the statute for denying any the right of bringing in their advancements, if they so elect, (as has been said might be done,) and of sequestrating their legacies for the use and benefit of the other children, as ‘for requiring any to bring them in, in defiance of the plain language of the law; that all the legatees or legacies (saying nothing about advancements) should contribute rata-bly,' to raise or make up the portion of the pretermitted child.
The cqnstruction given to the law by the chancellor, and which to me appears the plain and obvious one, is attended with none of these difficulties, and inconvenient if not absurd consequences. It gives a sensible meaning to and reconciles all parts of the statute with each *other, and avoids all the seeming conflict and repugnancy, by limiting and restraining the sense and effect of general words in one clause, by the specific and directory provisions in another. We have been taught by the legal commentators and sages of the law, that there are three points to be considered in the construction of remedial statutes — the old law, the mischief, and the remedy — and, moreover, that when the words of a law are dubious or uncertain, the most universal and effectual way of discovering the true-meaning is, by considering the reason and spirit of the rule. If we follow these guides, and employ these tests of construction, it seems to me, that no other conclusion is possible than that to which the chancellor arrived in’his brief but cogent and unanswerable opinion copied on the record. What then was the state of the law when the act of 1785 was passed? By it a- plenary testamentary power was given to every person deemed capable of exercising it, and when exercised according to the prescribed forms and solemnities of the law, no matter how capriciously or unjustly, no matter who were the objects of testamentary bounty, the act was valid — voluntas stat pro lege— but if any one chose not to exercise this testamentary power, and to die intestate, the law stepped in, and by the statute of descents and distributions disposed of his estate, real and personal; and in doing so, it adopted as its rule and guide the principle of equality.
To produce this equality there was incorporated in the statute the provision requiring advancements to be brought in, called the doctrine of hotchpot, borrowed from the English statute of distributions, which that statute had borrowed from the common law of descents, applicable originally in England only to lands given in frank marriage; a species of entail which were required to be brought in when lands descended in fee to parceners (who at common law were only females) before the donee in frank marriage could come into partition with her sisters. Until the Revisal of 1819, land and personalty were kept so wholly separate and *distinct, that a parcener was not bound to bring land into hotchpot to entitle him to claim his distributive share, nor a distributee to bring in an advancement of personalty, to entitle him to come in for an equal share in the partition of lands descended. By the Code of 1819 the two subjects were blended, and both lands and personalty required to be brought in, to entitle a child or descendant of an intestate to come into partition or distribution. We have seen, that as the law stood in 1785', it recognized the testamentary power in its most plenary extent, in every one deemed capable of exercising it, and where any one failed to exercise it, disposed of his estate according to the principles of equality, which we find incorporated in the statute of distributions -among- which is the prescription that those advanced in the lifetime, must bring in or account for their advancements, as a condition precedent to their right to come into distribution and partition.
But then there was found to exist a manifest defect, if not a casus omissus in the statute of wills, in failing to provide for the case of an after born pretermitted child, for whom no provision or settlement was made by a will made in favor of the children in esse at its date, or the death of the testator', as well as the case of a man dying leaving no children born, but his wife en-ciente, and leaving a will making po provision for the posthumous child. How did the statute remedy the mischief incident to the last case? Proceeding upon the hypothesis that the will was made in ignorance of a state of facts, which, had they been known to the testator, and supposing him possessed of the ordinary natural affections, would have prevented its execution, or have caused the execution of one in favor of the posthumous child, the statute wholly abrogates the will unless the child die unmarried or under twenty-one years of age. The will is allowed to have no effect during the life of the after born child, but if he should neither marry nor attain the age of twenty-one years, full effect is given to the *589 will. Here the statute, ^placing itself in loco parentis, and exercising a provident forecast, and making provision for contingencies not contemplated by the natural parent, has only done what it is most natural to presume he would have done, had he foreseen the event — the birth of a posthumous child — and in so doing has applied a remedy exactly commensurate with the mischief; nothing more, nothing less. What remedy has the statute provided for the mischief in the case under consideration? Not by abrogating the will and creating an intestacy, (as they would have done, if they meant to adopt equality as their rule, as in case of actual intestacy in dealing with the mischief,) but by recognizing and permitting the will to stand, and providing that the pretermitted child shall he recompensed, by having such portion made up to him or her in ratable contributions by the legatees and devisees in the will, as he or she would have succeeded to, if the father had died intestate; meaning, as I interpret it, an equal portion of the estate of which the father died, seized and possessed, or to which he was entitled. Here, again, as in the case first mentioned, the Legislature interferes no farther with the will than to modify it, and make it conform to the presumed intent of the testator in the contingency, unforeseen to him, that has happened; and as it was impossible for the law-giver to speculate as to what provision the testator would have made, whether equal or unequal with those provided for in the will, from convenience, if not absolute necessity, the rule of equity was adopted, no matter how far it may have been departed from in the will made in favor of the children in esse, when made.
I think it cannot be seriously gainsayed or questioned, that the doctrine of advancements was inapplicable to a case of partial intestacy before made so by the Code of 1849, although all must admit, the words of the statute are just as general and sufficient, if not more so, to make it applicable to that case than the words of this law are to make it applicable to this; and ^whilst the counsel for the appellants assumes in his argument that this must be regarded as a case of partial intestacy, not in relation to the estate in the case first supposed, but in relation to the person, yet he has failed to assign any good reason why it should be any more applicable to a constructive partial intestacy as to the person, created by the law, than to an actual partial intestacy as to the estate, created by the failure of the testator to place it under the operation of the will. If properly held inapplicable to the first, I should say a fortiori is it so as to the last? I inquired of the counsel, upon his construction of the law, how he would dispose of a case combining the three features of a will, partial intestacy in fact as to a part of the estate, and the birth of a pretermitted and posthumous child; and I understood him as admitting, that it enhanced the difficulty of carrying out his construction to its results and consequences, but I did not exactly understand his scheme for overcoming the difficulty.
Now, upon my construction, there is not the least difficulty as to the property undis-posed of by the will — that is distributable under the general statute of distributions without the doctrine of hotchpot being applied — because it is a case of partial intestacy, and the posthumous child is entitled to her share as an after born distribu-tee, not under the section of the statute of wills we are now considering, but under the statute of distributions; and it is divisible equally irrespective of advancements in the life-time, or legacies and bequests in the will, or the provision made for the after born by the statute. If this be so, does it not add confirmation, if not demonstration, to the conclusion, that the object of the law was only to make the after born an equal participant in the estate, of which the father died, seized and possessed, or entitled to and disposed of by the will; for, as to that which he failed to dispose of, and as to which he died intestate, there was no necessity for any legislation, the after born being entitled to her equal share under the statute of distributions; and if *in claiming her distributive share as to this, she could not call for the application of the doctrine of hotchpot, why should she be allowed to do so, in reference to the share or portion given her by the act, in the estate disposed of by the will? I should say, if the right to claim advancements in the first case — that of making distribution of so much of the estate as was undisposed of by the will — does not exist, a fortiori does it not, as to that disposed of by the will?
It seems to me to be a legal solecism, to hold that the doctrine of hotchpot applies to a case like the present. By the very terms of the statute, it is only applicable between parceners and distributees, and its whole sole and exclusive purpose is, to produce equality among all the parceners and distributees. Here are no parceners, no distributees. On the one hand is the posthumous child, whom' the appellants’ counsel terms a constructive parcener or distributee; on the other, only legatees and devisees. So far from all being made to come in and rendered equal, it is only to be.applied as between the advanced legatee and the posthumous child; and so far from conducing to equality producing greater inequality. The law says the portion is to be raised by ratable contributions out of the legacies and bequests. The counsel for the appellants says, or in effect says, it is to be raised by contributions from legacies, bequests and advancements made in the life-time — nay, more, not only are the legacies and devises of the over advanced or just fully advanced legatees, sequestered for the benefit of the posthumous and un-advanced legatees; but if they would elect upon the principle of hotchpot, to come in and bring with them their advancements, *590 as they would have the right to do, however great the folly and injustice of the act, they are to be denied that right, because it would enure to the benefit of the after born, by augmenting her share, and throw an additional burden upon the unadvanced legatee.
In view, then, of the old law, the mischief to be provided against, and this law enacted as the remedy; *in view of the fact that the will is not abrogated, but suffered to stand, and no intestacy, in fact created for the application of the doctrine of hotchpot — all the inequalities of the will, as between the original devisees and legatees, permitted to remain, and not one word said about advancements in the section; in view of what I regard as an undeniable proposition of law, that the principle of hotchpot was never applicable to a total testacy, or even partial intestacy, until the Code of 1849, (although by the letter of the statute of descents and distributions, its applicability might be urged with as much or more plausibility than to this case,) in view of the provision of the section requiring the portion to be raised or made up by the ratable contributions from the bequests and devises in the will, but saying nothing about advancements; can it be that we. are tied down to the letter of the first part of the section, and by the letter bound to interpret the Legislature as intending, by the use of the general terms employed, “as if the father had died intestate,” to place the posthumous issue upon higher ground than the children of whose existence he was cognizant, and for whom he made provision by his will, to give her more than an equal part of the estate of which he died possessed, or was entitled to at his death, by giving her a right to participate in advancements — a right denied to the living children and unadvanced legatees and devisees, although these devises and bequests were to be diminished by contribution and abatement in favor of the posthumous child?
In my opinion, we cannot so hold without disregarding the reason and spirit of the law, and without doing even more violence to its letter, taking the whole sec-' tion together, than is done by the construction contended for by the appellees; and without encountering effects and consequences most inconvenient and unjust, if not too preposterous and absurd to result from a legitimate construction of the law. With all due deference and respect for the opinions of *those who differ with me, I think the plain and obvious intent, and meaning of the statute, was to limit and confine the posthumous and pretermitted child to an equal portion of the estate to which the father was .entitled at his death, if disposed of by will, to be raised by ratable contributions from the bequests and devises according to the section of the statute of wills under consideration ; and as to so much as was not willed she was entitled to her equal share, irrespective of advancements or legacies under the statute of distributions. And I think the mistake of those who maintain a different opinion, has arisen from their giving to the general terms used in the first part of the section, “as if the father had died intestate,” (terms, in my view, employed by the Legislature only to indicate an intention to give an equal pa.rt of what the father was seized and possessed and disposed of by his will,) the same meaning and the same effect they would bear and have in case of an actual absolute intestacy; whereas, in this case there is no actual intestacy, or intestacy in fact, either, partial or total, but, on the contrary, a total testacy and its existence recognized by the law itself, and provision made upon the hypothesis of its continuing validity, by requiring the legatees and devisees to raise the portion of the after born by ratable contributions out of their several bequests. These are my reasons for concurring in opinion with the chancellor and for affirming his decree.